# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### March 29, 2011 Session

## STATE OF TENNESSEE v. KENNETH EDWARD WATTS

**Direct Appeal from the Criminal Court for Knox County**
**No. 86808A    Bob R. McGee, Judge**

---

**No. E2010-00553-CCA-R3-CD - Filed November 8, 2011**

---

A Knox County jury convicted the defendant, Kenneth Edward Watts, of vandalism resulting in $10,000 to $60,000 in damages, a Class C felony, and theft of property under $10,000, a Class D felony. The trial court sentenced him as a Range III, persistent offender to fifteen years for the Class C felony and as a career offender to twelve years for the Class D felony. On appeal, the defendant argues that the trial court erred by allowing a witness to testify as to the estimated cost of repair; that the evidence was insufficient to support his convictions; and that the trial court improperly calculated his sentencing range. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., joined, and J.C. MCLIN, J., mortuus.[1]

Joshua D. Hedrick (on appeal), and John Boucher (at trial), Knoxville, Tennessee, for the appellant, Kenneth Edward Watts.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; and Patricia Cristil and Deborah Malone, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

---

[1]This case was originally assigned to our colleague and friend, Judge J.C. McLin. After Judge McLin's untimely death on September 3, 2011, the case was re-assigned. Prior to his death, Judge McLin and his staff had done extensive work on this case. We have utilized much of that work, incorporated it into this opinion, and take this opportunity to acknowledge the faithful service of Judge McLin as a member of this Court.

# FACTS

In April 2007, a Knox County grand jury indicted the defendant for theft of property valued between $10,000 and $60,000, a Class C felony; two counts of vandalism resulting in $10,000 to $60,000 in damages, Class C felonies; theft of property valued between $1,000 and $10,000, a Class D felony; and aggravated burglary, a Class C felony. The matter proceeded to trial on December 9 and 10, 2009.

*State's Proof.* Walter L. Reed, Jr. testified that his father, Walter L. Reed, Sr., owned and operated rental properties in Knoxville, Tennessee. Walter L. Reed, Jr.'s brother, Kenneth "Ronnie" Reed, began managing and maintaining the properties when their mother's health caused their father to step down from the daily operations of running the rental business in 2002. He said that Ronnie Reed had helped their father manage the business for twenty-five to thirty years. Walter L. Reed, Jr. testified that he and his brother became co-owners of the rental properties upon their father's death, which occurred eleven days prior to trial.

On cross-examination, Walter L. Reed, Jr. identified his father's signature on an eviction notice addressed to the defendant and Wendy Ray, later identified as the defendant's girlfriend. The eviction notice was dated January 25, 2007.

Kenneth "Ronnie" Reed testified that he rented 2115 Belt Road, Apartment 14, Knoxville, Tennessee, to the defendant and Wendy Ray in October 2006. Apartment 14 was one-half of a duplex. No one lived in the adjoining unit, Apartment 13. Initially, he rented the apartment only to Ms. Ray, but when he collected the first month's rent, he received half of the rent from Ms. Ray, who asked him to return later in the day to collect the remainder of the rent from the defendant. She asked Ronnie Reed to add the defendant to the rent receipt. Ronnie Reed testified that the defendant and Ms. Ray paid the full rent in October, but did not pay the November rent until November 22. Ms. Ray and the defendant did not pay rent in December or January. Ronnie Reed personally handed to Ms. Ray an eviction notice, which gave them until the end of February to leave the premises, and he did not notice any visible damage to the apartment at that time. Ronnie Reed testified that he received information that led him to inspect the property on or about February 8. He discovered that someone had detached both Apartment 14 and Apartment 13's air conditioning units from the wall, removed all of the wiring in the entire house, removed copper plumbing, and removed most of the guttering. He said that there was "an enormous amount of trash inside and outside of the house," including pieces of wire stripping, which had previously covered electrical wiring. Ronnie Reed testified that the defendant and Ms. Ray were still living in the apartment, and they had run an electrical cord from a neighbor's house into their

apartment. He said that they patched up a window that they had broken and covered the hole in the wall where the air conditioning unit had been with a towel. Ronnie Reed testified that he did not receive any complaints from the defendant or Ms. Ray about not having any power. He said that the defendant did not have permission to enter Apartment 13 nor did he have permission to take any of the items stolen from either apartment. Ronnie Reed testified that he had paid $8,000 to replace the wiring in the unit and estimated that there was $3,500 to $4,000 worth of work yet to be done on the plumbing. He paid $800 to replace the gutters. He spent another $1,600 on replacing the air conditioning units and $3,200 to have Apartment 14 cleaned, painted, and retiled. Ronnie Reed testified that the rental company did not have insurance to cover the damage to the duplex. He also testified that during the period of time that the duplex was damaged, "copper was at its highest rating for recycling."

Edwin Doolin testified that he worked for PSC Metals, a scrap metal recycling facility. He said that he recognized the defendant and recalled the defendant's selling copper to PSC Metals during a period of time in January and February 2007. Mr. Doolin testified that the company copied the defendant's driver's license when he sold items to them. He said that the defendant came into the store several times to sell copper.

On cross-examination, Mr. Doolin agreed that he sent an email to a police detective stating that the defendant had accompanied someone else to the store but remained outside while the other person sold approximately eight pounds of copper. He said that the email referred to only one occasion.

Detective T. Michael Chieves, of the Knox County Sheriff's Department, testified that Ronnie Reed contacted his office about vandalism and theft at 2115 Belt Road on February 8, 2007, and filed a report on February 13, 2007. The judicial commissioner issued warrants sometime after February 8, and Detective Chieves went to the property to take photographs. Detective Chieves said that there was a burnt area in the backyard and agreed that "a common way to get the insulation off of the copper wire" was by burning it off. He testified that he had met Ronnie Reed and the defendant prior to February 8. He said that he made contact with the defendant on January 19, 2007, at 2115 Belt Road, Apartment 14. Detective Chieves testified that the apartment "looked like a pack rat lived there," but he did not "see any physical damage" at the time.

On cross-examination, Detective Chieves testified that there were no eyewitnesses to the defendant's cutting the wires or pulling the air conditioning units out of the duplex at 2115 Belt Road nor could he connect the copper from 2115 Belt Road to copper sold at PSC Metals. He testified that the only thing connecting the defendant to the theft and vandalism at 2115 Belt Road, was that the defendant lived there at the time.

Following the close of the state's proof, the state dismissed the first two counts of the indictment: theft of property over $10,000 and one of the vandalism over $10,000 charges.

*Defense Proof*. Mary Myers testified that she lived on Belt Road in January 2007 and could see 2115 Belt Road from her home. She said that she never saw the defendant taking anything from the duplex, but she did see an individual known to her as Lee Presley taking items from the duplex.

On cross-examination, Ms. Myers testified that Wendy Ray, the defendant's girlfriend, was her daughter. She said that if Ronnie Reed had testified that he rented the apartment to Wendy Ray and the defendant in October 2006, he would have been wrong. She also testified that "the only Mr. Reed that ever gave them a receipt that [she was] aware of was Walter Reed, [who] was Ronnie Reed's father." She said that she and Ronnie Reed removed her daughter's things from Apartment 14 together.

On re-direct examination, Ms. Myers testified that she had purchased the air conditioning unit for Apartment 14.

*State's Rebuttal*. Ronnie Reed testified in rebuttal that he knew Ms. Myers and knew that she was Wendy Ray's mother. He affirmed that he rented Apartment 14 to Wendy Ray in October 2006. He further testified that he had to evict Ms. Myers from her home, as well, and that he did not assist her in removing things from 2115 Belt Road because she notified him that she would take care of moving her daughter's possessions.

After the close of proof and deliberations, the jury found the defendant not guilty of aggravated burglary. The jury found the defendant guilty of vandalism resulting in $10,000 to $60,000 in damages, a Class C felony, and theft of property under $10,000, a Class D felony. The trial court sentenced the defendant as a Range III, persistent offender to fifteen years for the Class C felony and as a career offender to twelve years for the Class D felony.

***ANALYSIS***

I. Admission of Testimony Regarding Estimates

For his first issue, the defendant argues that the trial court erred by allowing Ronnie Reed to testify about the estimated costs to complete repairs on the duplex. He states that he does not take issue with costs that Ronnie Reed had already paid. The defendant contends that the state did not lay a proper foundation for Ronnie Reed's testimony regarding estimates because it did not establish that he "had performed or hired out this particular type of work before, or that [he] was familiar with the costs of this type and extent of plumbing work."

He further contends that the court's admission of the testimony without a proper foundation was an abuse of discretion and prejudiced him "by admitting additional evidence of value."

Generally, the admission of evidence is a matter left to the discretion of the trial court, and the trial court's decision will not be disturbed on appeal absent an abuse of discretion. *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008). "An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is 'illogical or unreasonable and causes an injustice to the party complaining.'" *State v. Dotson*, 254 S.W.3d 378, 392 (Tenn. 2008) (quoting *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006)).

Tennessee Rule of Evidence 602 limits a witness's testimony to matters for which sufficient evidence has been introduced to support a finding that the witness had personal knowledge of the matter. Rule 602 provides that such evidence "may, but need not, consist of the witness's own testimony." Tenn. R. Evid. 602. Non-expert witnesses giving testimony in the form of opinion are limited to opinions that are "rationally based on the perception of the witness," but property owners are explicitly allowed to testify as to the value of their property. Tenn. R. Evid. 701. Additionally, Tennessee courts have previously allowed the value of the cost of repairs to determine the value of vandalized property. *State v. Nona Pilgram*, No. E2004-00242-CCA-R3CD, 2005 WL 602380, at \*5 (Tenn. Crim. App., at Knoxville, Mar. 14, 2005).

Here, Ronnie Reed was the co-owner of the property in question at the time of trial. As a property owner, the rules of evidence allow his testimony regarding the value of his property. While he was not the property owner at the time of the theft and vandalism, it is reasonable to view Ronnie Reed as (a) standing in the shoes of his father, the original owner of the property, because he inherited the property and (b) as having the requisite personal knowledge to testify as to the value of the property. *See Levine v. March*, 266 S.W.3d 426, 440 n. 15 (Tenn. Ct. App. 2007) (stating in dicta that "the conservator of an absent or deceased party's property stands in the shoes of the absent or deceased party and, therefore, may testify with regard to the value of the absent or deceased party's property under Tenn. R. Evid. 701(b)."). Additionally, Ronnie Reed testified that he had managed and maintained his father's rental property for many years, and the trial court accepted his experience as an adequate foundation. Based on Ronnie Reed's experience and his inheriting the property, we conclude that the trial court did not abuse its discretion by allowing him to estimate the cost of repairing the plumbing of the duplex. Therefore, the defendant is without relief as to this issue.

## II. Sufficiency of the Evidence

The defendant challenges the sufficiency of the evidence, arguing that there was no direct proof to tie him to the theft of vandalism. He cites the lack of eyewitness testimony, lack of physical proof, and a witness's testimony that someone else was responsible as support for his challenge.

Our review begins with the well-established rule that once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). Therefore, on appeal, the convicted defendant has the burden of demonstrating to this court why the evidence will not support the jury's verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). To meet this burden, the defendant must establish that no "rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003); Tenn. R. App. P. 13(e). In contrast, the jury's verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). The state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from that evidence. *Carruther*s, 35 S.W.3d at 558; *Tuggle*, 639 S.W .2d at 914. Questions concerning the credibility of the witnesses, conflicts in trial testimony, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). We do not attempt to re-weigh or re-evaluate the evidence. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002); *Bland*, 958 S.W.2d at 659. Likewise, we do not replace the jury's inferences drawn from the circumstantial evidence with our own inferences. *See State v. Elkins*, 102 S.W.3d 581, 582 (Tenn. 2003); *Reid*, 91 S.W.3d at 277.

A defendant may be convicted on the basis of direct or circumstantial evidence or a combination of both. *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003); *see also State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). In fact, circumstantial evidence alone may be sufficient to support a conviction. *State v. Tharpe*, 726 S.W.2d 896, 899-900 (Tenn. 1987). Moreover, the state does not have the duty to exclude every other hypothesis except that of guilt. *See State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (adopting the United States Supreme Court standard that the jury is only required to weigh evidence, whether direct or circumstantial, against the reasonable doubt standard); *see also State v. James*, 315 S.W.3d 440, 455 n. 14 (Tenn. 2010) (noting that federal courts have rejected the notion that the government has a duty to exclude every other hypothesis save that of the defendant's guilt). "Circumstantial evidence in this respect is intrinsically no different from testimonial evidence ." *Holland v. United States*, 348 U.S.

121, 140 (1954). Therefore, when considering the sufficiency of evidence, we treat direct and circumstantial evidence the same.

Here, the defendant does not argue that the state did not prove the elements of the offenses but rather that the state did not prove his identity as the offender. Viewed in the light most favorable to the state, the evidence at trial revealed that the defendant lived in the apartment after someone had stolen the wiring and plumbing without making any complaints to his landlord. The state also presented evidence that the defendant faced eviction for failing to pay his rent and that the backyard showed evidence that someone had burned the insulation off of copper wiring. A witness testified that the defendant sold copper to PSC Metals during January and February 2007, when the price of copper was rising. The jury was entitled to make an inference that the defendant stole the copper from his apartment. In our view, any rational trier of fact could find that the defendant was the offender in this case. Therefore, he is without relief as to this issue.

### III. Sentencing

For his final issue, the defendant contends that the trial court erred in calculating the defendant's sentencing range when finding that the defendant was a career offender with regard to his Class D felony conviction and persistent offender with regard to his Class C felony conviction. The defendant argues that some of his prior convictions were part of a crime spree and that the twenty-four-hour merger rule operated to combine them. He further argues that once the twenty-four-hour merger rule is applied, he has five prior felonies, making him a persistent offender rather than a career offender.

The defendant's presentence report lists seven prior felonies, two of which were on the same day and two of which were on consecutive days. The trial court found that the defendant had six prior felonies for purposes of calculating his range as a career offender with regard to his Class D conviction and five prior felonies for purposes of calculating his range as a persistent offender with regard to his Class C conviction.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts.

*State v. Butler*, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); *State v. Smith*, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); *State v. Bonestel*, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses, (h) any statements made by the accused in his own behalf, and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2006); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2006), Sentencing Commission Cmts.; *Ashby*, 823 S.W.2d at 169.

Under Tennessee Code Annotated section 40-35-108(3), when a defendant's conviction class is a Class D or Class E felony, the defendant is a career offender if he has six prior felonies of any classification. A defendant is a persistent offender if he has "[a]ny combination of five (5) or more prior felony convictions within the conviction class or higher or within the next two (2) lower felony classes." Tenn. Code Ann. § 40-35-107(a)(1). As previously stated, theft of property under $10,000 is a Class D felony. "Except for convictions for which the statutory elements include serious bodily injury, bodily injury, threatened serious bodily injury, or threatened bodily injury to the victim or victims, convictions for multiple felonies committed within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions." Tenn. Code Ann. § 40-35-108(b)(4) (West 2007). This is commonly known as the twenty-four-hour merger rule. The legislature amended the statute in 2009 to exclude aggravated burglary from the twenty-four-hour merger rule, but the offenses in this case occurred in 2007. *See* Tenn. Code Ann. § 40-35-108(b)(4) (West 2010).

The defendant's presentence report, made an exhibit to the sentencing hearing, shows that he had seven felonies.

| Docket Number | Offense | Offense Class | Offense Date |
|---|---|---|---|
| 45271 | Aggravated Burglary | C | 3/11/1991 |
| 45265 | Possession: | E | 3/25/1991 |

| | | | |
|---|---|---|---|
| | Schedule VI drugs, not less than 0.5 ounces | | |
| 45264 | Aggravated Burglary | C | 3/25/1991 |
| 45267 | Aggravated Burglary | C | 3/28/1991 |
| 45271 | Attempt to Sell Cocaine | Unclear from record; D or C depending on amount | 3/29/1991 |
| 45268 | Aggravated Burglary | C | 5/29/1991 |
| 45263 | Burglary | D | 3/17/1993 |

The defendant argues that his March 28, 1991 (aggravated burglary), and March 29, 1991 (attempted possession of cocaine), offenses should combine under the twenty-four-hour merger rule. We note that it is the responsibility of the defendant to establish that offenses which were committed on consecutive days occurred within twenty-four hours of each other. The record is devoid of any proof to support such a claim. *See State v. John Roy Polly*, No. M1999-00278-CCA-R3-CD, 2000 WL 1606586, at *3 (Tenn. Crim. App. Oct.27, 2000) (holding that "where the defendant seeks the application of the twenty-four hour rule and the relevant convictions occur on different days, it is the defendant's responsibility to demonstrate that the two offenses occurred within twenty-four hours of each other"). The defendant has not shown that his sentences were erroneous; therefore, we affirm the sentences as imposed by the trial court.

## Conclusion

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
JERRY L. SMITH, JUDGE